UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| WILL HOLLY, | No. 2:07-cv-00583-MCE-EFB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| JOHN E. POTTER, Postmaster General of the United States, | |
| Defendant. | |

Through this action, Plaintiff Will Holly ("Plaintiff") challenges the termination of his employment with the United States Postal Service.  Plaintiff has sued the Defendant John E. Potter, Postmaster General of the United States ("hereinafter referred to as "Defendant", or institutionally as the "Postal Service") on grounds that he was discriminated against due to his race and further was retaliated against for protesting unlawful treatment.

///
///

1

Defendant now moves for summary judgment on grounds that the undisputed evidence shows that Plaintiff was terminated for failing to perform his job duties, and that no evidence has been presented that Plaintiff's race had anything to do with his termination.  Defendant further asserts that there is similarly no evidence that Plaintiff was subject to any unlawful retaliation.  For the reasons set forth below, Defendant's Motion will be granted.

## BACKGROUND

Plaintiff commenced employment at Defendant's Folsom Service Station as a rural mail carrier in 1998.  In 2003, a new rural route became available.  Plaintiff bid on that route, which was denominated as Route 5, because it gave him an additional day off, even though Plaintiff knew that the route's evaluated time was 8.13 hours and that it was considered a heavy route.  (Pl.'s Dep., 117:22-119:9; 235:9-14, attached as Exs. "M" and "N" to the Decl. Of Kelli Taylor in Support of Mot. for Summ. J.). Plaintiff was awarded Route 5 because he was the most senior carrier to place a bid.

The evaluated time for completing Route 5, like all average route completion time estimations, was set through a detailed process negotiated on a national level between the Postal Service and the National Rural Letter Carrier's Association ("NRLCA"). The process includes an annual count and physical inspection of each route in which the rural carriers can themselves participate.

2

Plaintiff himself was present during the 2005 reevaluation of Route 5, which resulted in a decreased completion time from 8.13 hours to 7.48 hours, effective April 16, 2005.  See Undisputed Material Fact ("UF") 51, 52; see also May 6, 2005 Notice of Removal, attached as Ex. 2 to Second Amended Complaint.  While Plaintiff generally complained about the reevaluation, he did not challenge the count or allege that Route 5's assessment differed from the national requirements.  UF 52.

Plaintiff regularly failed to meet the estimated completion time for Route 5 after he assumed responsibility for servicing the route in or about December of 2003.  During the approximate eighteen-month period he was assigned to Route 5, Plaintiff consistently took some two or three hours in excess of the time allotted for its completion.

Overall compliance with a route's evaluated time is important because rural carrier's daily schedules are based on that time.  Specifically, routes are evaluated in order to ensure that rural carriers do not work in excess of 2080 hours during a 52-week period.  Exceeding 2080 hours during this period is prohibited by the Sacramento District, of which the Folsom Service Center is a part, since violations in that regard result in repercussions under the National Agreement negotiated between the Postal Service and the NRLCA.  See UF 16.  Management must monitor Rural Carrier Workhour Reports and identify anyone in danger of exceeding the 2080 hour threshold in order to avoid unnecessary payment of overtime and penalties under the Fair Labor Standards Act.  UF 17, 18.

///

1    Postal Service policy mandates that corrective action be
2 taken promptly to avoid a violation of the 2080 hour maximum. UF
3 18.  Under the terms of the National Agreement, employees failing
4 to stay within the prescribed route guidelines are specifically
5 subject to suspension, demotion, discharge or other disciplinary
6 action.  UF 19.
7    When Plaintiff began to consistently take substantially
8 longer than the allocated time to deliver his route, the Postal
9 Service instituted several measures designed to help him improve
10 his delivery speed.  His supervisors along with a Postal Service
11 Rural Academy Instructor and a NRLCA state steward all provided
12 assistance.  Plaintiff was reportedly uncooperative and hostile
13 to any such offers of assistance.  His performance did not
14 improve.
15    By April 1, 2004, when Mark Stanfield became the Office in
16 Charge of the Folson Post Office, Plaintiff received almost daily
17 assistance from temporary and associate carriers in order to
18 complete his route within the allotted time and to avoid imminent
19 violation of the hourly threshold.  On November 5, 2004, after
20 Plaintiff's performance still had not improved, Mr. Stanfield
21 sent Plaintiff a Letter of Warning detailing both his inadequate
22 performance and warning him that continued failure to complete
23 his route in a timely manner could lead to removal.  That letter
24 detailed Plaintiff's job shortcomings and cited specific
25 examples.  It stated in pertinent part as follows:
26 ///
27 ///
28 ///

4

> "On several occasions during the month of September 2004, you have continued to fail to meet expectations in performance. Your route is evaluated at approximately 8.2 hours a day. You have continually exceeded this time by more than one hour a day. There have not been any mitigating factors to cause this performance deficiency. Examples of your inefficiency demonstrated are listed: September 11, 2004- 9.49 hours; September 18, 2004 10.00 hours; September 25, 2204- 9.66 hours; September 28, 2004- 10.00 hours.
>
> In addition, for the period of August 7, 2004 through September 3, 2004, you have only made your evaluated route time on one (1) day. When questioned by me concerning this matter, you failed to provide any acceptable reasons for your actions....
>
> Through your actions, you are failing to meet an essential requirement of your position. Postal Service supervisors must have employees who are able to conscientiously perform their duties at all times. Your actions are totally contrary to established Postal Service rules and regulations.
>
> It is hoped that this official Letter of Warning will serve to impress upon you the seriousness of your actions and that future discipline will not be necessary..... I must warn you that future deficiencies will result in more sever disciplinary actions being taken against you. Such actions may include suspensions or removal from the Postal Service."

UF 27, November 5, 2004 Letter of Warning to Plaintiff, Ex. 1 to Second Amended Complaint.

Although Mr. Stanfield thereafter met with Plaintiff on November 17, 2004 and November 23, 2004 to further discuss his ongoing shortcomings (UF 25), Plaintiff's work performance still did not improve.[1]  This caused the Postal Service to issue, on February 2, 2005, a Seven Calendar Day Paper Suspension confirming that Plaintiff's failure to meet the evaluated time constituted a serious job deficiency that had to be corrected.

---

[1] According to Mr. Stanfield, during most of these meetings Plaintiff "did not participate or even speak a word." Stanfield Decl., ¶ 9.  Stanfield described Plaintiff's demeanor as "defiant and uncooperative." Id.

5

UF 29. When Plaintiff's problems continued unabated, a Fourteen Day Calendar Suspension was issued. UF 30. Although Plaintiff was clearly on notice of his failure to meet job prerequisites, and had been given an opportunity to improve throughout, during this period he still regularly took several additional hours to complete his route. UF 21.

Ultimately, Plaintiff was the only carrier in the Folsom Post Office identified as being on pace to exceed the 2080 hour maximum, and he was the only employee that had to be placed on a non-work pay status in order to prevent a 2080 violation. UF 24. Given that fact as well as both the remedial measures and disciplinary actions that had already been taken, the Postal Service issued a Notice of Removal letter to Plaintiff for failing to follow instructions and failing to conscientiously discharge his assigned duties by not meeting the evaluated time. Plaintiff thereafter filed a grievance and was placed on administrative leave. Although an additional Notice of Removal had to be provided to Plaintiff on July 21, 2005 that took into account his preference-eligible veterans status, that Notice again confirmed Plaintiff's job deficiencies and reiterated the decision to terminate him as a result.

Although Plaintiff appealed his removal to the Merit Systems Protection Board, after conducting discovery, exchanging documents, producing affidavits and submitting extensive briefs. Plaintiff's removal was affirmed by decision dated January 25, 2007. That decision stated in pertinent part as follows:

///
///

6

> "It is clear that the proven incidents of unsatisfactory performance relate to the Agency's mission and that disciplinary action therefor promotes the efficiency of the service.....
>
> For the reasons discussed above with regard to the appellant's discrimination allegation, I find that the appellant has failed to establish that he was treated differently than others who were sufficiently similarly-situated to constitute them as valid comparators.... While the appellant has 14 years of Federal service, 11 of which are with the Agency, I find that the extent and seriousness of his performance failures far outweigh his years of service. And, while the lack of adequate training or an opportunity to improve may be mitigating factors in such a case, I find that the appellant effectively received both in this case."

(UF 34, January 25, 2007 MSPB Decision, Ex. "J" to Taylor Decl.).

The instant lawsuit was filed after the MSPB decision became final. Although Plaintiff's MSPB claim included only allegations of race discrimination and retaliation, his lawsuit filed here initially also included claims for age discrimination as well as alleged violations of due process and equal protection. Plaintiff's operative Second Amended Complaint, however, has pared back the scope of this litigation to race discrimination and retaliation, only.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

7

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

1  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
2  (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper
3  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
4  "before the evidence is left to the jury, there is a preliminary
5  question for the judge, not whether there is literally no
6  evidence, but whether there is any upon which a jury could
7  properly proceed to find a verdict for the party producing it,
8  upon whom the onus of proof is imposed."  Anderson, 477 U.S. at
9  251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20
10 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the
11 moving party has carried its burden under Rule 56(c), its
12 opponent must do more than simply show that there is some
13 metaphysical doubt as to the material facts .... Where the record
14 taken as a whole could not lead a rational trier of fact to find
15 for the nonmoving party, there is no 'genuine issue for trial.'"
16 Matsushita, 475 U.S. at 586-87.

17     In resolving a summary judgment motion, the evidence of the
18 opposing party is to be believed, and all reasonable inferences
19 that may be drawn from the facts placed before the court must be
20 drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.
21 Nevertheless, inferences are not drawn out of the air, and it is
22 the opposing party's obligation to produce a factual predicate
23 from which the inference may be drawn.  Richards v. Nielsen
24 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
25 aff'd, 810 F.2d 898 (9th Cir. 1987).
26 ///
27 ///
28 ///

9

**ANALYSIS**

**A.  Racial Discrimination**

Plaintiff concedes that his discrimination claim is premised on a disparate treatment theory.  (Pl.'s Opp., 2:-9-10).  Under the familiar burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the plaintiff in a disparate treatment case must initially establish a prima facie case of discrimination.  To satisfy that fundamental prerequisite, Plaintiff here must first show not only that he belongs to a protected class and was subject to an adverse employment action, but also that he performed his job satisfactorily prior to the alleged disparate treatment and that employees outside the protected class received more favorable treatment.  <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1196 (9th Cir. 2003).

Plaintiff's discrimination complaint fails because he cannot establish the requisite prima facie case.  It is undisputed that the evaluated time for completion of Route 5, which Plaintiff serviced between December 2003 and May of 2005, was 8.13 hours.[2] UF 20.  Plaintiff expressly admitted at deposition that he failed to deliver Route 5 within that evaluated time most of the time. UF 21.

///

///

---

[2] As indicated above, however, as a result of reassessment of Route 5 in early 2005, that figure was decreased to 7.48 hours as of April 16, 2005.

The logs detailing delivery times for the eighteen months Plaintiff was on Route 5 indicated that Plaintiff rarely met the allotted time and usually took to two to three hours more than the evaluated time to finish the route.  UF 21.  Even Plaintiff's counsel conceded at oral argument that his client was unable to complete Route 5 within its established parameters.

It is equally clear that in both 2004 and 2005, Plaintiff's actual delivery times placed him in danger of violating the 2080 hour threshold.  See UF 22.  This required the Postal Service to take corrective action to rectify the situation.  UF 18, 19.  As indicated above, in this case Plaintiff's supervisors met with him on several occasions.  He was given assistance to improve his delivery efficiency by both management and union representatives. When Plaintiff's performance still failed to improve, he was given a formal Letter of Warning that specifically cautioned him that continued failure could lead to more discipline, including termination.  UF 27.  Thereafter, when Plaintiff's poor performance continued, he was given two separate Seven and Fourteen Day Paper Suspensions, again warning him that failure to meet the evaluated time could not be tolerated.  UF 29, 30.  When improvement still was not forthcoming, Plaintiff was removed. His subsequent MSPB appeal of his eventual termination was rejected; the hearing officer determined that Plaintiff's job inadequacies justified his discharge.  UF 34.  All this evidence makes it clear that Plaintiff was not performing his job duties in a satisfactory manner.  Absent such satisfactory performance, Plaintiff cannot make even a prima facie case of race discrimination.

11

1    Plaintiff is no more successful in demonstrating that other
2 similarly-situated employees who were not African-American were
3 afforded more favorable treatment.  Plaintiff himself could not
4 identify any other rural carriers with work deficiencies similar
5 to his own.  (Pl.'s Dep. 68:24-70:6, Ex. "M" to Taylor Decl.).
6 He was the only rural carrier that had to be placed on a no work
7 pay status in order to avoid exceeding the 2080 hour annual
8 threshold (UF 41), as well as the only carrier who needed almost
9 daily assistance from temporary and associate carriers in order
10 to reduce his workhours.  UF 43; Decl. of Mark Stanfield in Supp.
11 of Mot. for Summ. J., ¶ 12.

12    The only evidence Plaintiff himself has offered to support
13 any disparate treatment in this regard is a report prepared by
14 Donna Bailey, a paralegal in the office of the attorney who
15 represented Plaintiff in his post-termination administrative
16 appeal.  As indicated in oral argument on this Motion, Ms. Bailey
17 lacks the qualifications necessary to offer any admissible expert
18 opinion in that regard.  There is no evidence that she has any
19 education, experience or expertise in economics or statistical
20 analysis.  She admitted that she looked only at "employees that
21 she thought would illustrate the point we were trying to make."
22 (See Bailey Dep., 14:21-24, pertinent portions of which are
23 attached as Ex. 4 to the Taylor Decl. submitted in Reply to Pl.'s
24 Opp.).  In addition, Ms. Bailey was not familiar with Postal
25 Service routes and requirements in any event.  Id. at 50:2-51:19;
26 36:17-37:6; 21:5-22:6,).
27 ///
28 ///

12

Ms. Bailey specifically denied having any unique knowledge or experience enabling her to testify as an expert, and had never previously testified or been retained as an expert. Id. at 16:3-16.[3]  Defendants' request to strike the Bailey report pursuant to Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993) is accordingly granted. Absent that report, Plaintiff offered no evidence whatsoever to show that other employees were treated more favorably, despite being given the opportunity to point to any other such evidence buttressing his discrimination claim at oral argument.

Although Plaintiff's failure to establish even a prima facie case of discrimination necessarily dooms his Title VII claim, the outcome would not have changed even had he been successful in making that initial showing. Satisfying the burden of stating a prima facie case only shifts to the employer the burden of rebutting any inference of discrimination through evidence showing "that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993), citing Texas Dept. of Comty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). Here, the overwhelming evidence attesting to the deficiency of Plaintiff's job performance, as already delineated, provides the requisite legitimate, non-discriminatory reason for his termination.

///
///

---

[3] Interestingly, upon questioning at deposition even Ms. Bailey had to admit that Plaintiff repeatedly failed to perform his job requirements, and had a continuing and ongoing problem in that regard. Id. at 84:14-85:3.

13

This shifts the burden of persuasion back to Plaintiff one final time to show that the legitimate reason proffered by the Postal service was pretextual, with intentional discrimination instead being the true reason for his discharge. St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 515. Plaintiff can avoid summary judgment at this stage of the analysis only by offering specific facts evincing pretext. Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995). Plaintiff himself could not recall hearing any direct or indirect racial comments being made in the workplace. UF 5, 6. He could not identify any Postal Service supervisors or superiors who discriminated against him because of his race. UF 7.

The only such evidence offered by Plaintiff of any racial bias is a declaration obtained by Rick Robinson, another African-American rural mail carrier, concerning a single, isolated incident of racial insensitivity occurring in 1995, some ten years before Plaintiff's termination. Not only did that incident have nothing whatsoever to do with Plaintiff, it is simply too temporally remote to have any conceivable relevancy to this case. Defendant's request to strike the Robinson Declaration is therefore also granted. Because Plaintiff's counsel conceded he had no other evidence demonstrating any racial bias towards Plaintiff, Plaintiff could not have shown pretext even had he gotten that far in the McDonnell-Douglas calculus, which he did not.

///
///
///

14

Plaintiff's First Cause of Action, for racial discrimination, fails on numerous fronts, thereby mandating that summary adjudication be granted in Defendants' favor as to that claim.

**B.   Retaliation**

A viable retaliation claim also requires that Plaintiff make an initial prima facie showing.  In order to demonstrate potential retaliation, Plaintiff must show not only that he engaged in statutorily protected activity and that an adverse employment action was therefore taken against him, but also that a causal link connected those two events. <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d 1459, 1464 (9th Cir. 1994).

Plaintiff's retaliation claim fails because the only statutorily protected activities he identifies consist of grievances/claims filed after the Postal Service began attempting to get Plaintiff to deliver his assigned route more quickly. Plaintiff's counsel confirmed at oral argument that the retaliation claim related to Plaintiff's complaints after disciplinary proceedings had already commenced.  Plaintiff obviously cannot establish the required causal nexus between his complaints and resulting disciplinary action when the disciplinary proceedings in fact predated those complaints.

///
///
///
///

15

1    While Plaintiff appears to suggest that the change in
2 estimated delivery time for his route was also retaliatory, as
3 stated above, that change did not occur until April of 2005, well
4 after his performance issues in timely completing the route had
5 been noted and disciplinary proceedings were commenced.
6 Moreover, the change in route delivery time was made through a
7 negotiated process involving both Postal Service management and
8 the applicable union in which Plaintiff himself participated.
9 The change in route time has no bearing upon Plaintiff's
10 retaliation claim.
11    Finally, the fact that neither the Postal Service employee
12 who proposed Plaintiff's removal on performance grounds (Folsom
13 Officer in Chief Mark Stanfield) or the deciding official (Donna
14 Landau) even knew about Plaintiff's prior EEO claim also
15 militates against any possibility of retaliation in this case.
16 See UF 53-54.

**CONCLUSION**

20    The facts here are abundantly clear that Plaintiff was
21 terminated because he was unable to satisfactorily perform his
22 job, and not because of either racial discrimination or
23 retaliation.  Plaintiff has presented no admissible evidence
24 whatsoever to lend credence to any conclusion to the contrary.
25 Given that lack of evidence, Plaintiff's counsel is reminded that
26 Rule 11(b) requires that claims brought before this Court have
27 evidentiary support and be warranted by existing law.
28 ///

16

This case fails to meet those basic standards, and counsel is admonished that future failure to comply with the requirements of Rule 11 will not be tolerated.

Summary judgment is hereby GRANTED in its entirety, and the Clerk is directed to close this file.

IT IS SO ORDERED.

Dated: November 21, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE